UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CHARTWELL THERAPEUTICS
      LICENSING, LLC,

                 Plaintiff,

        v.

CITRON PHARMA LLC; and RISING
      PHARMA HOLDINGS, INC.,

               Defendants.
--------------------------------------------------------x

**MEMORANDUM AND ORDER**

16-CV-3181 (RPK) (CLP)

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Chartwell Therapeutics Licensing, LLC and defendant Citron Pharma LLC have

been litigating before this Court since 2016. The dispute revolves around a deal in which Citron

agreed to purchase pharmaceutical drugs from plaintiff. Late last year, plaintiff filed an amended

complaint that introduced a new theory of liability, a new cause of action, and the new defendant

Rising Pharma Holdings, Inc. *See* First Amended Complaint ("Amended Complaint" or "FAC")

(Dkt. #185). Citron has responded by moving to strike or dismiss the Amended Complaint, or, in

the alternative, to preclude plaintiff's newly alleged theories. And the new defendant, Rising

Pharma, has moved to dismiss or, in the alternative, to sever and stay the claims against it. Both

defendants also ask that I either strike or disregard a declaration that plaintiff submitted

in opposition to their pending motions challenging the Amended Complaint. For the reasons stated

below, (**i**) Citron's motion to strike or dismiss the Amended Complaint is GRANTED IN PART

and DENIED IN PART; (**ii**) the claims against Rising Pharma are SEVERED and

TRANSFERRED; and (**iii**) defendants' motions to strike or disregard plaintiff's declaration are

GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.      Factual Background

The following factual allegations are taken from the Amended Complaint and documents incorporated in the Amended Complaint by reference.  For the purposes of the pending motions to dismiss, I assume all factual allegations in the Amended Complaint are true.

### A.      The Term Sheet

Plaintiff is a pharmaceutical manufacturer in the state of New York.  FAC ¶ 1. At an undisclosed time, plaintiff obtained a license from the U.S. Food and Drug Administration to manufacture a generic version of the antibiotic drug Doxycycline Hyclate ("Doxy").  *Id.* ¶¶ 13-14.  This acquisition attracted the attention of Citron, *id.* ¶ 15, a pharmaceutical developer, marketer, and distributor in the state of New Jersey, *id.* ¶ 2.  After discussions between plaintiff and Citron in 2014, the parties orally agreed that Citron would buy specific quantities of Doxy from plaintiff.  *Id.* ¶ 15.  Citron also agreed to pay plaintiff a percentage of the profits it earned from reselling Doxy to third parties.  *Ibid.*

On July 11, 2014, Citron sent plaintiff a written term sheet and a purchase order ("Initial Purchase Order").  *Id.* ¶¶ 16-17.  The purchase amount was $3,294,750.  *Id.* ¶ 16.  In an email to Citron, plaintiff disputed the proposed profit-sharing calculation methodology.  *Id.* ¶ 17.  Plaintiff therefore crossed out the example calculation on the sheet and then executed it as modified by both the email and the crossed-out portion of the term sheet.  *Ibid.*  Citron responded by transferring $3,294,750 by wire to plaintiff on July 14, 2014.  *Id.* ¶ 19.  At "a later date," Citron also delivered to plaintiff a signed version of the Term Sheet.  *Id.* ¶ 20.

Shortly after paying plaintiff in full against the Initial Purchase Order, Citron sought to modify the Term Sheet by adjusting the bottle count size of some of the Doxy.  *Id.* ¶ 23.  Plaintiff

agreed to the change.  *Ibid.*  The parties formalized this modification through a new purchase order on July 16, 2014.  *Id.* ¶ 24.  Plaintiff did not agree to sell Citron any other Doxy product besides those in the modified term sheet ("Term Sheet").  *Id.* ¶ 26.

The Term Sheet contained several other significant provisions.  First, Citron agreed to provide plaintiff a twelve-month rolling forecast of its anticipated purchases.  *Id.* ¶ 27.  In each twelve-month forecast, the projection for the first three months would be binding on the parties. *Ibid.*  Second, Citron agreed to account for and pay plaintiff the proper profit share on a quarterly basis.  *Id.* ¶ 29.  Third, plaintiff was granted the right to audit Citron's books and records to verify these quarterly reports and payments.  *Id.* ¶ 31.  This right was generally limited to twice in each twelve-month period.  *Id.* ¶ 32.  In the event that Citron underpaid plaintiff by 5% or more, Citron would be required to cover the costs of the audit and pay plaintiff interest on the underpayment at an annual rate of 18%.  *Ibid.*  Finally, the Term Sheet contemplated a long-term agreement regarding the Doxy sales that the parties could execute later.  *Id.* ¶ 44.  Any such long-term agreement would apply to preliminary purchase orders under the Term Sheet.  *Ibid.*  If no agreement was signed, the terms in the Term Sheet would bind the parties.  *Ibid.*

## B.      The Breach

As early as the fourth quarter of 2014, Citron was in breach of the Term Sheet because it underreported profits it owed to plaintiff.  *Id.* ¶ 33.  For example, Citron took a deduction in that quarter for a $1.5 million shelf stock adjustment granted to Walmart Stores ("Walmart SSA"). *Id.* ¶ 34.  But the Walmart SSA was in fact granted in the first quarter of 2015 and should not have been deducted in the fourth quarter of 2014.  *Id.* ¶ 35.  Citron admitted this improper accounting during discovery.  *Id.* ¶ 36.  Another breach occurred in February 2015, when Citron used the wrong method to calculate plaintiff's profit share.  *Id.* ¶ 37.  Plaintiff noticed and corrected this

error.  *Id.* ¶ 38.  By the end of 2014, Citron owed more than $1.7 million under the profit-sharing agreement.  *Id.* ¶ 39.

In April 2015, Citron started asking plaintiff to (**i**) reduce the prices in the Term Sheet and (**ii**) give Citron a rebate for purchased Doxy that remained unsold as of May 1, 2015.  *Id.* ¶ 40.  Plaintiff did not agree to the changes.  *Id.* ¶ 41.  Plaintiff expressed willingness to consider adopting a binding, long-term agreement on different terms than those in the Term Sheet—but only after an audit.  *Id.* ¶ 42.  Citron acknowledged this position.  *Id.* ¶ 43.  After that acknowledgment, plaintiff continued to sell Doxy to Citron and invoiced Citron in accordance with provisions in the Term Sheet.  *Id.* ¶¶ 44-45.  Citron contemporaneously acknowledged receiving the invoices, and did not object to any of the invoices until after this lawsuit began.  *Id.* ¶¶ 46-48.

In fall 2015, plaintiff began an audit because it suspected that Citron was underreporting and underpaying the profit share owed to plaintiff.  *Id.* ¶¶ 49, 51.  Plaintiff retained an accounting firm to help with the audit.  *Id.* ¶ 50.  Citron refused to provide complete access to the books and records deemed necessary for the audit by the firm.  *Id.* ¶ 52.  Citron then conditioned the audit's continuation on an agreement by plaintiff to accept the return of certain Doxy shipments.  *Id.* ¶ 53.  Despite these obstructions, discovery in this action later revealed that Citron had underpaid plaintiff under the Term Sheet.  *Id.* ¶ 54.  Citron owed (**i**) $8,221,759 in profit shares from Doxy sales it made to third parties and (**ii**) $6,290,753 from the Doxy purchases it had made from plaintiff, not including interest.  *Ibid.*  Up to the filing of the Amended Complaint, plaintiff met its obligations under the Term Sheet.  *Id.* ¶ 55.

### C.    The Sale of Citron's Assets to Aceto Corporation

In December 2016, Citron sold substantially all of its assets to Aceto Corporation.  *Id.* ¶ 61.  Aceto is an international pharmaceutical marketing, sales, and distribution company.  *Ibid.*

The sale was formalized in a Product Purchase Agreement (the "Citron PPA"). *Id.* ¶ 61. Aceto paid a total of $462 million under the Citron PPA. *Id.* ¶ 62. Citron received $270 million in cash up-front, as part of the deal. *Ibid.* Aceto, in turn, received more than 50,000 units of Doxy that plaintiff had originally sold to Citron. *Id.* ¶ 63. Aceto resold those Doxy units to Citron's customers. *Id.* ¶ 64.

### D.     The Bankruptcy Action

In February 2019, Aceto and its subsidiaries filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). *Id.* ¶ 66; *see In re Tri Harbor Holdings Corporation (f/k/a Aceto Corporation), et al.*, No. 19-13448-VFP (Bankr. N.J. Feb. 19, 2019) (the "Bankruptcy Action"). Several Aceto subsidiaries asked the Bankruptcy Court to approve and authorize a sale of all or substantially all of their assets to Shore Suven Pharma Inc., now called Rising Pharma. *See* Bankruptcy Action, No. 19-13448-VFP (Bankr. N.J. Mar. 8, 2019) (Bankr. Dkt. #109). The Bankruptcy Court ultimately approved a sale between those parties (the "Sale Order"). Baker Decl. in Supp. Rising Pharma's Mot. to Dismiss ("Baker Decl."), Ex. C (Dkt. #211-3). The terms of the sale were set out in an Asset Purchase Agreement (the "Bankruptcy APA"). *Ibid.* The Bankruptcy Court retained exclusive jurisdiction to interpret, implement, and enforce the terms of both the Sale Order and the Bankruptcy APA. Sale Order ¶ 49.

According to plaintiff, Rising Pharma agreed in the Bankruptcy APA to purchase Citron's assets and assume all of Citron's obligations and liability connected to this action. FAC ¶ 67. To support that claim, plaintiff furnishes a copy of the Bankruptcy APA, which is incorporated by reference into the Amended Complaint. A provision in the Bankruptcy APA states that Rising Pharma assumed "the Chartwell Liability." *See* Bankruptcy APA § 1.3(f), at 5. The "Chartwell

Liability" is defined in the Bankruptcy APA as "all [l]iabilities arising from and in connection with the matter styled as *Chartwell Therapeutics v. Citron Pharma LLC*, No. 1:16-cv-03181 (E.D.N.Y.), and the related liabilities under the Citron PPA." *Id.* § 9.17, at 59.

## II.   Procedural Background

On June 8, 2016, plaintiff filed a complaint against Citron in the Supreme Court of New York, Kings County.  Notice of Removal ¶ 1 (Dkt. #1).  The Complaint contained five causes of action: (**i**) breach of contract, (**ii**) entitlement to payment for goods sold and delivered, (**iii**) unjust enrichment, (**iv**) quantum meruit, and (**v**) denial of a contractual right to audit.  Notice of Removal, Ex. A ¶¶ 13-43 (Dkt. #1-1).  Citron removed the lawsuit to this Court on June 16, 2016.  Notice of Removal (Dkt. #1).

After years of discovery, Citron moved for leave to amend its answer on September 28, 2018.  *See* Citron's Mot. to Amend (Dkt. #117).  Magistrate Judge Cheryl L. Pollak granted Citron's motion, over plaintiff's opposition, on September 4, 2019.  *See* Sept. 4, 2019 Order (Dkt. #181).  Citron filed its amended answer five days later.  *See* Citron's Amended Answer (Dkt. #182).

During a telephone conference on September 19, 2019, plaintiff informed Magistrate Judge Pollak that it was considering amending its complaint in response to Citron's amended answer. *See* Transcript of Proceedings Held on September 19, 2019, at 6-7 (Dkt. #183).  Plaintiff asked Magistrate Judge Pollak to extend the default deadline to amend under Federal Rule of Civil Procedure 15(a)(1).  *Ibid.*  Magistrate Judge Pollak granted the extension request.  *Ibid.*

Plaintiff filed the Amended Complaint on October 4, 2019.  It contained new allegations, joined Rising Pharma as a party, and replaced the cause of action for goods sold and delivered with one for failure to satisfy an account stated.  *See* FAC ¶¶ 3, 11, 33-39, 46-48, 61-67, 76-87,

94-95, 102-03, 108-111.  The Amended Complaint also contained allegations involving the time period after the filing of the initial complaint.  The new allegations as to Citron relate to (**i**) removal and jurisdiction, *id.* ¶¶ 5-10; (**ii**) the Citron PPA, *id.* ¶ 2; (**iii**) Citron's conduct after the filing of this lawsuit, *id.* ¶¶ 46-48, 54; (**iv**) the sale of Citron to Aceto and the Bankruptcy Action, *id.* ¶¶ 56-67; and (**v**) damages, *id.* ¶¶ 74-75, 77, 82-85, 87, 95, 103, 108-09, 111.  As to Rising Pharma, plaintiff added (**a**) general descriptions of Rising Pharma and the Bankruptcy Action, *id.* ¶ 3; (**b**) a statement of jurisdiction, *id.* ¶ 11; and (**c**) allegations that Rising Pharma assumed liability to plaintiff in the Aceto Bankruptcy Action, *id.* ¶¶ 66-67, 76, 86, 94, 102, 110.

Citron opposed the amendment, arguing both that plaintiff did not properly seek leave of the court before filing the Amended Complaint and that it was premature to join Rising Pharma.  *See* Citron's Ltr. to M.J. Pollak (Dkt. #187).  Magistrate Judge Pollak rejected these arguments, holding that plaintiff was entitled to amend its complaint as of right under Rule 15(a)(1)(B) after Citron filed its Amended Answer.  Nov. 19, 2019 Order at 5-7 (Dkt. #198).  Nevertheless, Magistrate Judge Pollak stated that defendants could still object to Citron's joinder on grounds of bad faith or prejudice and could seek dismissal or summary judgment as to any of the claims in the Amended Complaint.  *Id.* at 7-8.

Although the defendants did not file any Rule 72 objections to Magistrate Judge Pollak's rulings, they later challenged the Amended Complaint on different grounds.  Rising Pharma filed a motion to dismiss, or, in the alternative, to sever and stay the claims against it.  *See* Mem. of Law in Supp. of Rising Pharma's Mot. to Dismiss or in the Alternative, to Sever and Stay ("Rising Pharma's Dismissal Memo") (Dkt. #212).  Citron moved to dismiss or strike the Amended Complaint.  *See* Mem. of Law in Supp. of Citron Pharma LLC's Mot. to Dismiss and/or Strike ("Citron's Dismissal Memo") (Dkt. #214-1).  Plaintiff opposed both motions with an opposition

brief and a declaration that attached several exhibits. *See* Pl.'s Mem. of Law in Opp. to Defs.' Mots. to Dismiss ("Plaintiff's Opposition") (Dkt. #216); Pl.'s Decl. in Opp. to Defs.' Mots. to Dismiss (the "Declaration") (Dkt. #215). Both Plaintiff's Opposition and the Declaration introduced new allegations. The exhibits attached to the Declaration included (**i**) the Term Sheet and related emails, (**ii**) the Citron PPA, (**iii**) an excerpt of the deposition of Citron's Chief Executive Officer, (**iv**) a December 2017 letter from Citron's counsel to plaintiff's counsel, and (**v**) an excerpt of Rising Pharma's schedules submitted to the Bankruptcy Court. In response, defendants moved to strike the Declaration on March 11, 2020. *See* Mem. of Law in Supp. of Citron Pharma LLC's Mot. to Strike (Dkt. #219); Mem. of Law in Supp. of Rising Pharma's Mot. to Strike (Dkt. #221). On August 31, 2020, I issued an order to show cause why the claims against Rising Pharma should not be transferred to the District of New Jersey under 28 U.S.C. § 1404(a). *See* Aug. 31, 2020 Order. The parties submitted letters on that question on September 14, 2020. *See* Dkts. #226-31.

## DISCUSSION

Broadly speaking, this decision reaches four conclusions. First, plaintiff was entitled to amend its complaint to add new allegations and join Rising Pharma to this action. Second, the claims against Rising Pharma should be severed and transferred to the District of New Jersey. Third, while it is not appropriate to strike Plaintiff's Opposition or Declaration, I will disregard any new factual allegations raised in those papers when deciding the pending motion to dismiss. Finally, plaintiff's unjust enrichment and quantum meruit claims are dismissed.

## I. Plaintiff Was Entitled to Amend Its Complaint to Include New Allegations and Defendant Rising Pharma

Citron moves to strike or dismiss the Amended Complaint because plaintiff belatedly introduced a new theory of liability, a new cause of action, and a new defendant. *See* Citron's

Dismissal Memo 2, 11-16.  Although Magistrate Judge Pollak already denied a separate motion to strike the Amended Complaint (Dkt. #198 at 5-6), Citron's new motion raises novel arguments concerning prejudice and undue delay. These novel arguments can be grouped into two categories. First, Citron argues that plaintiff should not be permitted to add the new allegations and the new cause of action related to the period before the filing of the Complaint.  Second, Citron argues that plaintiff should not be permitted to join Rising Pharma to the action after several years of litigation.

### A.  Plaintiff Was Entitled to Amend the Complaint to Include New Allegations and a New Cause of Action

Citron argues that plaintiff should not have amended its complaint to add allegations that Citron breached the Term Sheet through the Walmart SSA and a claim for failure to satisfy an account stated.  *See* Citron's Dismissal Memo 11-16.  As explained below, Citron's arguments are unpersuasive because plaintiff's amendments were made as of right.

Pre-trial amendments to pleadings are governed by Federal Rule of Civil Procedure 15(a). *See Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995).  That rule describes two types of related pleadings relevant here:

- First, a pleading "to which a responsive pleading is required."  Fed. R. Civ. P. 15(a)(1)(B).  An example of this type of pleading is a complaint.  *See id.* at 7(a)(1); *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 101 n.14 (2d Cir. 2019); *Allen ex rel. Allen v. Devine*, 726 F. Supp. 2d 240, 245 (E.D.N.Y. 2010).

- Second, a "responsive pleading."  Fed. R. Civ. P. 15(a)(1)(B).  An example of this type of pleading is an answer.  *See ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 112 (2d Cir. 2012) (citing Fed. R. Civ. P. 7(a), 12(a)).

Under Rule 15(a)(1)(B), a party is entitled "once" to amend a pleading "to which a responsive pleading is required" within 21 days after being served the opposing party's "responsive pleading." Fed. R. Civ. P. 15(a)(1)(B).  This rule governs regardless of whether the responsive pleading being served is the original version of the responsive pleading or an amended version, because the latter

supersedes the former, *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) ("It is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect."). *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1483 (3d ed. 2004) ("Although Rule 15(a) limits a pleader to one amendment without leave of court within specified time periods, the right may be 'revived' when another party amends a pleading."); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 260 (2d Cir. 2002) (stating that courts may not deprive parties of the right to file responses to amended pleadings); *Neibert v. Computer Scis. Corp.*, No. 1:12-CV-02277-SCJ, 2013 WL 12204332, at *2 (N.D. Ga. Mar. 20, 2013) ("In this action, Plaintiff filed an amended complaint on November 1, 2012, 15 days after being served with Defendant's amended answer. Because Plaintiff had not previously amended his complaint, Plaintiff's amended complaint properly complies with Rule 15(a)(1)(B).").

Here, plaintiff was entitled under Rule 15(a)(1)(B) to add new allegations and a new cause of action to its complaint. Plaintiff filed its original complaint in 2016, *see* Notice of Removal, Ex. A (Dkt. #1-1), which qualified as a pleading "to which a responsive pleading is required." *See* Fed. R. Civ. P. 7(a)(1); *Krasner v. Episcopal Diocese of Long Island*, 328 F. Supp. 2d 367, 371 (E.D.N.Y. 2004). Citron filed a "responsive pleading" on September 9, 2019 in the form of an amended answer. Citron's Amended Answer (Dkt. #182). The filing of this amended answer revived plaintiff's right to amend its complaint, *see* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1483 (3d ed. 2004), and plaintiff exercised that right in a timely fashion on October 4, 2019, *see* Sept. 19, 2019 Minute Entry; Sept. 19, 2019 Hr'g Tr. at 6-7 (Dkt. #183) (extending plaintiff's deadline to amend as of right to October 4, 2019). Therefore, plaintiff's amendment of the complaint to add new allegations and a new cause of action was authorized by Rule 15(a)(1)(B).

Citron nevertheless argues that plaintiff's amendments came unduly late, and prejudiced Citron, because they were added three years into the litigation. *See* Citron's Dismissal Memo 11-16. But a plaintiff's right to amend its complaint under Rule 15(a)(1) is "absolute." *Gaming Marketing Solutions, Inc. v. Cross*, 528 F. Supp. 2d 403, 406 (S.D.N.Y. 2007) (quotations omitted); *see In re Agent Orange Product Liability Litigation*, 517 F.3d 76, 103-04 (2d Cir. 2008) (holding that the district court erred in denying leave to amend because plaintiffs "were entitled to amend their complaint as a matter of right without leave of the district court"); *see also Gosain v. State Bank of India*, 414 Fed. App'x 311, 315 (2d Cir. 2011). The cases that Citron invokes in support of the proposition that leave to amend may be denied, *see* Citron's Dismissal Memo 12-13, address how a court should exercise its discretion when plaintiff does not have an automatic right to amend its complaint. *See, e.g.*, *Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau,* 786 F.2d 101, 103 (2d Cir. 1986). Accordingly, I deny Citron's request that I bar plaintiff from adding to its complaint new allegations and a new cause of action.

### B.      Plaintiff Was Entitled to Add Rising Pharma as a Defendant

Under this Circuit's precedent, plaintiff similarly had a right to add Rising Pharma as a party under Rule 15(a)(1). The case law in this circuit concerning whether a plaintiff may add new parties as of right under Rule 15(a) is not entirely consistent. The Second Circuit held that amendment as a matter of course includes the addition of parties in *Washington v. N.Y.C. Board of Estimate*, 709 F.2d 792, 795 (2d Cir. 1983), but then suggested in an unpublished decision several years later that the addition of new parties "lies in the discretion of the [district court] judge" under Rule 21, *Renard v. Dillman*, 162 F.3d 1148 (table), 1998 WL 642474 at *2 (2d Cir. 1988). District courts have taken inconsistent approaches. *Compare Singh v. Prudential Ins. Co. of Am, Inc.*, 200 F. Supp. 2d 193, 196-97 & n.7 (E.D.N.Y. 2002) (concluding that Rule 15(a)

permits plaintiffs to add or drop parties as of right before the filing of a responsive pleading); *Mori v. Saito*, No. 10-CV-6465, 2012 WL 13042573, at *6 (S.D.N.Y. Feb. 16, 2012); *with Momentum Luggage & Leisure Bags v. Jansport, Inc.*, No. 00-CV-7909, 2001 WL 58000, at *1-2 (S.D.N.Y. Jan. 23, 2001) ("Rule 15(a) generally governs the amendment of complaints, but in the case of proposed amendments where new defendants are to be added, Rule 21 governs.").  Ultimately, I conclude I am bound by the Second Circuit's published decision in *Washington*, under which plaintiff was entitled to amend its complaint to add Rising Pharma as a defendant.

## II.   The Claims Against Rising Pharma Are Severed and Transferred to the District of New Jersey

Rising Pharma argues that I should dismiss the claims against it or, in the alternative, sever and stay the claims against it.  As explained below, I conclude that the claims against Rising Pharma should be severed and transferred to the District of New Jersey. I therefore do not reach Rising Pharma's dismissal arguments.

### A.   The Claims Against Rising Pharma Are Severed Under Rule 21

Federal Rule of Civil Procedure 21 states that a court may "sever any claim against a party." Courts have broad discretion when deciding whether severance is appropriate.  *See New York v. Hendrickson Bros.*, 840 F.2d 1065, 1082 (2d Cir. 1988).  While the Second Circuit has not set forth specific criteria for severance, courts in this circuit generally consider whether (**i**) "the claims arise out of the same transaction or occurrence"; (**ii**) the claims present common questions of law or fact; (**iii**) judicial economy (including possible settlement) would be served by severance; (**iv**) severance would avoid prejudice; and (**v**) different evidence is required for the separate claims. *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 918 (S.D.N.Y. 2016); *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011). On balance, these factors favor severance.

**First Factor.**  The first severance factor weighs lightly against severance.  The claims against Rising Pharma arise out of the same transaction or occurrence as the claims against Citron. Plaintiff's claims against Citron arise out of alleged breaches of the Term Sheet—a contract between plaintiff and Citron.  *See* FAC ¶¶ 33-39, 68-75.  Plaintiff's claims against Rising Pharma, in turn, arise out of Rising Pharma's alleged assumption of Citron's liability through the Bankruptcy APA.  *Id.* ¶¶ 66-67, 76.  Assuming plaintiff's allegations are true, there is a logical connection between the respective claims against Citron and Rising Pharma because Citron's alleged breach of the Term Sheet gives rise to both claims.  *See N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 115 (S.D.N.Y. 2015) (analyzing this factor by assessing whether claims are logically related).  But I conclude that this factor weighs only modestly against severance because the claims against Rising Pharma also involve distinct issues concerning the obligations that Rising Pharma assumed under the Bankruptcy APA.

**Second Factor.**  The second factor, concerning whether the claims present common questions of law or fact, also weighs against severance.  Plaintiff's claim against Rising Pharma depends on Citron's liability to plaintiff.  Further, assuming Rising Pharma did assume Citron's liability, any finding against Citron would likely apply equally against Rising Pharma.

**Third Factor.**  The judicial economy factor weighs heavily in favor of severance.  The purpose of severance here is to transfer the claims to the District of New Jersey with a recommendation that they be referred to the Bankruptcy Court.  The Bankruptcy Court retained exclusive jurisdiction to interpret the terms of the Sale Order and Bankruptcy APA, *see* Sale Order ¶ 49, and these terms are the basis for plaintiff's claims against Rising Pharma, *see* FAC ¶¶ 66-67. In fact, plaintiff has already conceded in Bankruptcy Court that the Bankruptcy Court has exclusive jurisdiction to interpret the terms of the Sale Order and Bankruptcy APA.  *See* Rising Pharma's

Sept. 14, 2020 Letter to J. Kovner, Ex. 1 at 68:6-9, 82:1-8 (Dkt. #227-1).  Judicial economy therefore is best served by respecting the jurisdiction of the Bankruptcy Court and its expertise in interpreting its own orders.

In reaching this determination, I reject plaintiff's two arguments for why severance for the purposes of transferring this action would not facilitate judicial economy.  First, plaintiff suggests the Bankruptcy Court has invited me to interpret the Bankruptcy APA, pointing to a statement from the Bankruptcy Judge that "the other court can read a contract just as well as I can," *see id.* at 81:22-25.  Context makes clear, however, that the Bankruptcy Judge was not disputing that it had retained exclusive jurisdiction over the contract at issue, and is prepared to interpret the Bankruptcy APA if plaintiff properly raises a contractual interpretation issue.  *See, e.g.*, *id.* at 82:1-15.  Second, plaintiff argues severance and transfer would be inefficient because "[a]nother court would have to become familiar with the same facts underlying Citron's liability" to plaintiff and "would also have to become familiar with the intricate history of Rising [Pharma]'s bankruptcy and related [Bankruptcy] APA."  *See* Plaintiff's Opposition 18.  But the Bankruptcy Court is the very court that approved the Bankruptcy APA (*see* Sale Order; Bankruptcy APA) and is currently adjudicating plaintiff's proofs of claim against the debtors (Baker Decl., Exs. D and E).  The Bankruptcy Court is therefore able to adjudicate plaintiff's claims in an economical manner.

**Fourth Factor.**  The fourth factor—whether severance would avoid prejudice—weighs in favor of severance.  Rising Pharma entered into the Bankruptcy APA based on the understanding that all disputes concerning that order would be handled by the Bankruptcy Court—which has expertise in bankruptcy sales generally as well as the Bankruptcy APA specifically.  If I retain plaintiff's claims against Rising Pharma, I will be undermining this settled expectation.

By contrast, plaintiff would be minimally prejudiced by severance because it is already adjudicating claims in the Bankruptcy Court.

**Fifth Factor.**  The fifth factor, concerning overlapping evidence, weighs lightly against severance.  There is some potential overlap in evidence between plaintiff's claims against Citron and Rising Pharma.  If the Bankruptcy Court determines that Rising Pharma assumed Citron's liabilities, it will then need to assess the merits of plaintiff's claims against Citron.  That said, the significance of this factor is mitigated here because the Bankruptcy Court has the power to delay the ultimate resolution of the Rising Pharma claims until this Court resolves the Citron claims.  That is, the Bankruptcy Court can choose to decide whether Rising Pharma assumed Citron's liabilities, but to delay any potential resolution of plaintiff's claims against Citron until those claims are resolved by this Court.  In fact, the Bankruptcy Court has already exercised its power to stay resolution of the Rising Pharma claims: in 2019, it stayed litigation over plaintiff's bankruptcy claims against Rising Pharma through March 31, 2021.  *See* Baker Decl., Ex. F at ¶ 6.

* * *

The five factors, taken together, warrant severance.  The interest of judicial economy weighs particularly heavily here given the overlap between plaintiff's claims against Rising Pharma and the ongoing Bankruptcy Action.  Moreover, plaintiff's claims against Citron and Rising Pharma are not so closely linked in fact, law, or evidence that severance would be inappropriate.  Accordingly, the claims against Rising Pharma are severed.

**B.**     **The Claims Against Rising Pharma Are Transferred to the District of New Jersey**

I transfer the claims against Rising Pharma to the District of New Jersey.  Under 28 U.S.C. § 1404(a), courts may for "the convenience of parties and witnesses" and "in the interest of justice" transfer "any civil action to any other district . . . where it might have been brought."  The "broad

language" of this section permits courts to transfer cases *sua sponte*. *Lead Indus. Ass'n. Inc. v. OSHA*, 610 F.2d 70, 79 n.17 (2d Cir. 1979); *see Ferrier v. Q. Link Wireless*, 413 F. Supp. 3d 135 (E.D.N.Y. 2018) (citing *Lead Indus. Ass'n. Inc.*, 610 F.2d at 79 n.17); *Bank of Am., N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013). District courts have broad discretion in assessing convenience under Section 1404(a). *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). In deciding whether to transfer a case, courts commonly consider the plaintiff's choice of forum; the convenience of witnesses; the location and access to relevant documents and sources of proof; the convenience of parties; the locus of operative facts; the procedural ability to compel the attendance of unwilling witnesses; and the relative means of the parties. *Id.* at 106-07. Courts in the Second Circuit have also considered the forum state's familiarity with the governing law, trial efficiency, and the interests of justice broadly. *See, e.g.*, *Keitt v. New York City*, 882 F. Supp. 2d 412, 459 (S.D.N.Y. 2011).

As an initial matter, plaintiff's claims against Rising Pharma in the District of New Jersey "might have been brought" in the District of New Jersey. 28 U.S.C. § 1404(a). In general, a proceeding "related to" a case under Title 11 may be brought in the district court where the bankruptcy case is pending. 28 U.S.C. § 1409(a). A proceeding is "related to" an underlying bankruptcy when its outcome could have a "conceivable effect" on the bankrupt estate. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992); *see In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225-26 (3d Cir. 2004), *as amended* (Feb. 23, 2005). Plaintiff's claims against Rising Pharma rest on the terms of the Bankruptcy APA, which was ordered by the U.S. Bankruptcy Court for the District of New Jersey. *See* FAC ¶¶ 66-67. If Rising Pharma in fact assumed Citron's liabilities to plaintiff through the Bankruptcy APA—whether from Citron directly or from Aceto or its subsidiaries—the obligations of the debtors, and therefore the bankrupt estate, would be

affected.  The claims against Rising Pharma are therefore "related to" the Bankruptcy Action, and plaintiff could have brought its claims in the "district court" in which the Bankruptcy Action was pending.  28 U.S.C. § 1409(a).

The factors considered when deciding whether to transfer a case weigh heavily in favor of transfer.  Trial efficiency and the interests of justice are particularly significant here.  The Bankruptcy Court has retained exclusive jurisdiction to interpret its own Sale Order and the Bankruptcy APA.  *See* Sale Order ¶ 49.  *Cf. Bank of Am., N.A.*, 934 F. Supp. 2d at 427 (finding Bankruptcy Court's exclusive jurisdiction weighed heavily in favor of transfer); *Lothian Cassidy LLC v. Ransom*, 428 B.R. 555, 562 (E.D.N.Y. 2010).  This exclusive jurisdiction also comes with intimate knowledge of those documents.  Similarly, the locus of operative facts lies squarely in the Bankruptcy Court itself given that plaintiff's claims against Rising Pharma lie in the Bankruptcy APA.  *See* FAC ¶¶ 66-67; *cf. AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*, 675 F. Supp. 2d 354, 370 (S.D.N.Y. 2009) (analyzing this factor based on where the claims arose).

The remaining factors do not outweigh judicial economy and the interests of justice.  Most are neutral.  All parties before me are currently litigating both in New York (in this action) and in New Jersey (in the Bankruptcy Action).  Neither party has suggested that either venue is burdensome.  Nor does witness convenience appear to be an issue when the claim arises entirely out of the Bankruptcy APA, a document approved by the Bankruptcy Court itself.  While plaintiff's choice of forum is "presumptively entitled to substantial deference," *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004), that presumption has been overcome here through the Bankruptcy Court's exclusive jurisdiction and familiarity with the relevant facts.  *See Bank of Am., N.A.*, 943 F. Supp. 2d at 427.  Therefore, I transfer the case to the District of New Jersey.

III.    **The Court Will Not Consider Factual Allegations Raised for the First Time in Plaintiff's Declaration and Plaintiff's Opposition**

Both defendants move to strike the Declaration and portions of Plaintiff's Opposition because they introduce new factual allegations that I am unable to consider on a motion to dismiss. *See* Citron's Motion to Strike 1-4 (Dkt. #219-1); Rising Pharma's Motion to Strike 3-6 (Dkt. #221-5).   As an initial matter, I lack the power under the Federal Rules of Civil Procedure to strike a declaration or a motion.   Even so, I will disregard the new factual allegations in the Declaration and Plaintiff's Opposition as is appropriate when resolving a motion to dismiss.

A.    **Declarations and Memoranda Cannot be Struck Under Federal Rule of Civil Procedure 12(f)**

Defendants move to strike the Declaration and portions of Plaintiff's Opposition without identifying the procedural basis for their request.   *See generally* Citron's Motion to Strike (Dkt. #219); Rising Pharma's Motion to Strike (Dkt. #221).   I construe their arguments as falling under Rule 12(f), the procedural rule that relates to motions to strike.   Rule 12(f) of the Federal Rules of Civil Procedure allows a court to strike from a "pleading" any "redundant, immaterial, impertinent, or scandalous matter."   But neither a declaration nor a memorandum appears to be a "pleading" under the Federal Rules of Civil Procedure.   Rule 7, which lists the types of pleadings that are permissible in federal court, does not mention declarations or memoranda.   *See* Fed. R. Civ. P. 7(a).   Numerous courts have held that they are not authorized by Rule 12(f) to strike matters in documents other than pleadings.   *See, e.g.*, *United States ex rel. Lee v. N. Adult Daily Health Care Ctr.*, 174 F. Supp. 3d 696, 699-700 (E.D.N.Y. 2016) (motion for an alternate remedy); *Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 615 (S.D.N.Y. 2015) (motion to dismiss), *opinion reinstated on reconsideration*, No. 14-CV-4390, 2015 WL 6509112 (S.D.N.Y. Oct. 28, 2015); *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 334-35 (S.D.N.Y. 2008) (motions,

affidavits, declarations); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed. 2004) ("[M]otions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f).").  By moving to strike the Declaration and portions of Plaintiff's Opposition, defendants seek a remedy that is not available under the Federal Rules of Civil Procedure.  I therefore deny their motions to strike.

### B. The Court May Not Consider Matters Outside the Amended Complaint When Deciding Defendants' Motions to Dismiss

Nevertheless, I may not consider matters outside the pleadings when resolving a motion to dismiss.  *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 203 (2d Cir. 2013); *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996).  That includes new factual allegations in memoranda, affidavits, declarations, and sur-replies.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (allowing courts, when deciding motions to dismiss, to disregard extra-pleading material filed by the parties); *Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd.*, No. 11-CV-5802, 2014 WL 4175914, at *4 (E.D.N.Y. Aug. 20, 2014).

Plaintiffs point to no authority to the contrary.  While plaintiffs emphasize that defendants have not established that the Declaration should be stricken from the docket, *see* Plaintiff's Memo in Opp. to Defs.' Mots. to Strike 3-8 (Dkt. #223), the question of whether it is appropriate to strike the Declaration or portions of Plaintiff's Opposition is distinct from the question of whether I may consider the content of those materials in deciding a dismissal motion.  The cases cited by plaintiffs do not suggest that a court can rely on facts alleged for the first time in a supplemental declaration or a memorandum when deciding a motion to dismiss.  And while plaintiff explains that it alleged new facts in the Declaration to correct inaccuracies in defendants' filings, *id.* at 7-8, plaintiff cites no law permitting me to consider new allegations under those circumstances.

That said, two exhibits attached to the Declaration are appropriately considered in adjudicating the motion to dismiss because they were incorporated by reference into the Amended Complaint.  When deciding motions to dismiss, courts may consider written instruments attached to a complaint as exhibits or incorporated into the complaint by reference.  *Chambers*, 282 F.3d at 152-53.  For documents to be incorporated by reference, "the complaint must make a clear, definite and substantial reference to the documents." *DeLuca v. AccessIt Group, Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotations marks and citations omitted).  Here, the Amended Complaint incorporates by reference Declaration Exhibit 1, which contains emails related to the Term Sheet and the Term Sheet itself, *see* FAC ¶¶ 17-18, and Declaration Exhibit 2, which is the Citron PPA, *see id.* ¶¶ 17-18.  By contrast, the Amended Complaint does not mention any of the documents contained in Declaration Exhibits 3, 4, and 5.  Accordingly, I will consider Declaration Exhibits 1 and 2 but disregard the remaining Declaration exhibits.

## IV.   The Quantum Meruit and Unjust Enrichment Claims Are Dismissed

### A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

When considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co., Ltd.*

*v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quotations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Rather, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations and internal quotation marks omitted).  While the plausibility standard "is not akin to a probability requirement," it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

At the motion to dismiss stage, a court may consider only the complaint itself, documents either attached to the complaint or incorporated in it by reference, documents the plaintiff relied on and knew of when bringing suit, and matters in the public record that are subject to judicial notice.  *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

### B.      Application

Citron moves to dismiss plaintiffs' quantum meruit and unjust enrichment claims because plaintiffs are simultaneously alleging a breach of contract claim under the Term Sheet.  Citron's Dismissal Memo 20.  Although pleadings may generally include quantum meruit and unjust enrichment claims along with breach of contract claims, the Amended Complaint fails to state a claim for either unjust enrichment or quantum meruit.  Those claims are therefore dismissed under Rule 12(b)(6).

If a plaintiff seeks to recover on a breach of contract claim, it may not also recover on unjust enrichment or quantum meruit claims.  Because quantum meruit and unjust enrichment are both implied contracts, New York law does not permit recovery in quantum meruit "if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (collecting cases).  Unjust enrichment claims are likewise barred by the existence of a valid and enforceable written contract.  *Superintendent of Ins. v. Ochs*, 377 F.3d 209, 213 (2d Cir. 2004) (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)).

At the pleading stage, however, a "party may state as many separate claims . . . as it has, regardless of consistency."  Fed. R. Civ. P. 8(d)(3).  "Federal courts have construed this language [in Federal Rule of Civil Procedure 8(d)(3)] to permit plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim." *Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) (internal citations and quotation marks omitted)*; see Paper Corp. of the U.S. v. Schoeller Tech. Papers, Inc.*, 742 F. Supp. 808 (S.D.N.Y. 1990) (citing *Shapiro v. Dictaphone Corp.*, 411 N.Y.S.2d 669 (App. Div. 1978)) (allowing plaintiff to plead quantum meruit in the alternative because the existence of the contract was "in dispute"); *see also Altaire Pharm., Inc. v. Rose Stone Enters.*, No. 13-CV-4373, 2013 WL 6235862, at *7 (E.D.N.Y. 2013) (collecting cases).  Nevertheless, to do so, a party must, at minimum, allege in the alternative that the parties' contract was void or otherwise unenforceable.  *See Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195-96 (S.D.N.Y. 2009) (explaining that a plaintiff may plead breach of contract and quantum meruit in the alternative "when there is a dispute as to the agreement's validity or enforceability"); *Perfect Dental, PLLC v. Allstate Ins. Co.*, Nos. 04-CV-586, 04-CV-588, 2006

WL 2552171, at *1 (E.D.N.Y. Aug. 31, 2006) (plaintiffs may plead unjust enrichment and breach of contract in the alternative "where there is a bona fide dispute regarding the existence of a contract").

The Amended Complaint fails to meet the requirements for simultaneously pleading breach of contract and, in the alternative, quantum meruit and unjust enrichment.  Plaintiff alleges the existence of a contractual Term Sheet concerning the sale of Doxy that governs the issues in this case.  FAC ¶¶ 12-32.  Plaintiff does not allege, in the alternative, that the Term Sheet is not valid or enforceable.  On the contrary, plaintiff's explanations of its quantum meruit and unjust enrichment claims incorporates its allegations regarding the Term Sheet.  *Id.* ¶¶ 88, 96 ("Chartwell incorporates by reference all previous allegations as if fully set forth herein.").  Because plaintiff nowhere alleges, in the alternative, that the parties' contract was void or otherwise unenforceable, plaintiff's quasi-contractual claims are deficient.  *See Air Atlanta Aero Eng'g Ltd.*, 637 F. Supp. 2d at 196 ("[Plaintiff's] failure to allege that the contracts at issue are invalid or unenforceable precludes it . . . from seeking quasi-contractual recovery."); *Gianascio v. Giordano*, No. 99-CV-1796, 2003 WL 22999454 (S.D.N.Y. Dec. 19, 2003) (dismissing a claim of unjust enrichment because "plaintiff is alleging the existence of an enforceable contract in his claim for unjust enrichment").  Plaintiffs' quantum merit and unjust enrichment claims are therefore dismissed under Rule 12(b)(6).

## CONCLUSION

Citron's motion to strike or dismiss the Amended Complaint is GRANTED IN PART and DENIED IN PART.  The claims against Rising Pharma are SEVERED and TRANSFERRED to the United States District Court for the District of New Jersey with a recommendation that the case be referred to Judge Vincent F. Papalia of the United States Bankruptcy Court of New Jersey.

And defendants' motions to strike or disregard plaintiff's declaration are GRANTED IN PART and DENIED IN PART.

SO ORDERED.

/s/ Rachel Kovner
Rachel P. Kovner
United States District Judge


Dated:  Brooklyn, New York
        November 30, 2020